## Alexandria

JEFFREY K. MacNELLY

v.

MARTHA S. MacNELLY

No. 1285-92-4

Decided November 30, 1993

COUNSEL

Charles A. Trainum, Jr. (Christopher J. Kersting; Trainum, Snowdon & Deane, on brief), for appellant.

Gregory L. Murphy (Murphy, McGettigan, Richards & West, on brief), for appellee.

OPINION

**ELDER, J.**—Jeffrey K. MacNelly (hereinafter "husband") appeals from the trial court's order requiring him to continue paying spousal support to Martha S. MacNelly (hereinafter "wife") following her remarriage. Neither the divorce decree nor the property settlement agreement incorporated therein contains specific language concerning the effect of remarriage. The decree and the agreement stated only that husband shall pay wife $7,000 each month for seven years or until the death of either party, whichever occurs first. On appeal, husband argues that the trial court erred in holding that under Code § 20-109, he remained obligated to pay spousal support following wife's remarriage. Holding that Code § 20-109 requires that the agreement contain express language for spousal support to continue after remarriage, we reverse the ruling of the trial court.

The parties were married on July 13, 1985, and one child was born of the marriage. The parties separated on March 27, 1988, and entered into a property settlement agreement on February 1, 1989. Paragraph 15 of the agreement provided:

> 15. *SUPPORT AND MAINTENANCE OF WIFE:*
>
> The husband agrees to pay wife for her support and maintenance SEVEN THOUSAND DOLLARS ($7,000) in cash per month; the first payment is to be made on the first of February 1989, and the payments shall continue on the first day of each and every month thereafter until the first day of February 1996, at which time support and maintenance to the wife shall cease with that last payment. These sums are taxable as income to the wife and deductible by the husband. In the event that the husband or wife dies before February 1, 1996, then the obligation for support and maintenance by the husband to the wife shall cease.

This agreement was ratified and incorporated into the divorce decree. Neither the agreement nor the decree contains any provision regarding the effect of wife's remarriage on husband's duty to pay spousal support. The agreement does provide, however, that "[u]nless otherwise provided, nothing in this Agreement shall be construed as a waiver by either party of any right or cause of action arising out of the conduct of the other party." Other relevant provisions are paragraph 17, which states that child support will automatically increase by twenty-five percent as of February 15, 1996, and paragraph 13(e), which states that husband will pay wife fifteen percent of the fair market value for

the entire syndication and licensing rights of his comic strip no later than September 30, 1996.

Wife remarried on December 5, 1991, and husband stopped making spousal support payments on January 29, 1992, based on that remarriage. Wife then sought to enforce the spousal support provisions of the decree and agreement. After hearing argument, the trial judge stated:

> I think [Code § 20-109.1] provides that [the agreement] must otherwise provide, and I don't think it is silent, it doesn't use the specific words, but I don't find the property settlement agreement paragraph 15 to be silent. It makes very clear as to the length, term, and payments, and there is nothing there that terminates upon remarriage. On the face of it, it's clear. Accordingly, the interpretation of the Court is that this is not terminated by the remarriage, despite the fact that there is a strong public policy for precisely that action because it has been contracted away.

On that basis, the trial judge directed that spousal support obligations were to continue beyond wife's remarriage and ordered husband to pay $21,000 in support arrearages.

■ Code § 20-109 provides that "[u]pon the death or remarriage of the spouse receiving support, spousal support shall terminate unless otherwise provided by stipulation or contract." The issue in this case is the application of that statute to the terms of a property settlement agreement which stated expressly that the death of either party would terminate the obligation but did not mention the effect of wife's remarriage. We hold that the outcome in this case is controlled by our recent holding in *Radford v. Radford,* 16 Va. App. 812, 433 S.E.2d 35 (1993). The agreement in *Radford,* as here, provided for payment of a sum certain each month for a finite number of years, and the agreement was incorporated into the divorce decree. We held in that case that the

> language [of Code § 20-109] contemplates an expressed, not implied, provision that support shall not terminate upon death or remarriage. By resolving ambiguity, Code § 20-109 reduces litigation. To permit its mandate to be overcome by implication would introduce ambiguity, encourage litigation and, thereby, undermine the statute's purpose. . . .

> Consequently, because . . . the agreement contained no express provision for continuation upon the death or remarriage of the spouse receiving support, the spousal support terminated upon the wife's remarriage.

*Id.* at 814, 433 S.E.2d at 36; *see Miller v. Hawkins,* 14 Va. App. 192, 196-97, 415 S.E.2d 861, 864 (1992). Admittedly, the agreement at issue here differs from the one at issue in *Radford.* In *Radford,* the agreement was silent not only as to the effect of remarriage but also as to the effect of death. The agreement here contained an express provision concerning the effect of the death of either party on payment of the spousal support obligation. Nevertheless, we hold that, in order to accomplish the stated objective of the statute to resolve ambiguity and thereby reduce litigation, any attempt to abrogate the effect of the statute requires express language either citing the statute or expressly stating that remarriage does not terminate the obligation. Although wife argues that the inclusion of a provision concerning termination of the obligation upon death of either party, coupled with the absence of reference to the effect of remarriage, shows the parties' intent to avoid the statute, we think that allowing such a result would clearly subvert the goal of that statute. As stated above, "[t]o permit [the statute's] mandate to be overcome by implication would introduce ambiguity, encourage litigation and, thereby, undermine the statute's purpose." *Radford,* 16 Va. App. at 813, 433 S.E.2d at 36.

For the aforementioned reasons, we reverse the ruling of the trial court.

*Reversed.*

Moon, C.J., and Fitzpatrick, J., concurred.