COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Haley and Senior Judge Annunziata
Argued at Alexandria, Virginia


DIANE BARKER, F/K/A
  DIANE HUTSON-WILEY

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0740-06-4                      JUDGE JAMES W. HALEY, JR.
                                                         MARCH 20, 2007
JAMES HUTSON-WILEY


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     Robert W. Wooldridge, Jr., Judge

        Brian D. West (The West Law Group, P.C., on briefs), for appellant.

        Gregory L. Murphy (Joseph B. Mullaney; Vorys, Sater, Seymour
        and Pease, LLP, on brief), for appellee.


        Diane Barker (wife) appeals the trial court's decision terminating James Hutson-Wiley's

(husband) spousal support obligations under the divorced couple's September 1, 2001 property

settlement agreement (PSA).  Wife argues:  (1) the trial court erred in holding that husband's

spousal support obligation terminated upon her remarriage, pursuant to Code § 20-109(D); and,

(2) the trial court erred in denying the admission of parol evidence to establish the meaning and

intent of ambiguous language in the PSA.  Finding no error, we affirm.

                                          FACTS

        Husband and wife separated on May 24, 1993.  On November 17, 1993, husband and wife

executed a Comprehensive Agreement Concerning Marital Separation, Support, and Property

Settlement (Comprehensive Agreement) documenting each party's mutual maintenance and support

obligations, in addition to "all of their property rights, and all rights, claims, relationships, or

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

obligations between them . . . ." The Comprehensive Agreement was incorporated into a divorce decree entered on August 2, 1994.

Several years later, on September 1, 2001, husband and wife executed the PSA to "supercede and replace the aforesaid Comprehensive Agreement in its entirety." The PSA outlined husband's spousal support obligation and explained that "such payments . . . shall not be modified or terminated except in the sole event of the death of either party." The document further stated, "The parties agree that this [PSA] shall constitute the entire agreement of the parties and that there are no other agreements or representations . . . made or relied upon by either party in executing this document." The PSA was incorporated into a Consent Order entered by the Circuit Court of Fairfax County on October 9, 2001.

Wife remarried on November 27, 2004. Husband, therefore, terminated his spousal support payments pursuant to Code § 20-109(D). Wife subsequently filed a Verified Petition for Rule to Show Cause on July 11, 2005, alleging that husband's discontinued support violated the terms of the PSA. Pursuant to Code § 20-109(D), the trial court dismissed wife's petition, explaining, "In short, the [PSA] does not clearly, expressly, and unequivocally preserve [wife's] right to spousal support . . . in the event of remarriage."

## PAROL EVIDENCE

Wife argues that the trial court should have admitted parol evidence to determine the parties' intent and the meaning of the PSA. We disagree.

"[M]arital property settlements . . . are contracts subject to the rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms." Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677, 678 (2002). See also Southerland v. Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995). Therefore, when the terms of a contract are clear and unambiguous, the trial court must construe them according to their

plain meaning. <u>Bridgestone/Firestone, Inc. v. Prince William Square Assocs.</u>, 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995). Whether a contract is ambiguous is a question of law subject to *de novo* review on appeal. <u>Wilson v. Holyfield</u>, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984).

Extrinsic evidence is admissible to explain an ambiguity in a contract. <u>Cohan v. Thurston</u>, 223 Va. 523, 525, 292 S.E.2d 45, 46 (1982). However, as the Supreme Court of Virginia has explained, "[c]ontracts are not rendered ambiguous merely because the parties or their attorneys disagree upon the meaning of the language employed to express the agreement." <u>Doswell Ltd. P'ship v. Va. Elec. & Power Co.</u>, 251 Va. 215, 222-23, 468 S.E.2d 84, 88 (1996); <u>see also</u> <u>Wilson</u>, 227 Va. at 187, 313 S.E.2d at 398. Rather, it is the job of the trial court to:

> construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.

<u>Magann Corp. v. Electrical Works</u>, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962); <u>Meade v. Wallen</u>, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984). Therefore, if the intent of the parties can be determined from the language they employ in their contract, parol evidence respecting their intent is inadmissible. <u>Amos v. Coffey</u>, 228 Va. 88, 91-92, 320 S.E.2d 335, 337 (1984); <u>see also</u> <u>Godwin v. Kerns</u>, 178 Va. 447, 451, 17 S.E.2d 410, 412 (1941) ("[P]arol evidence . . . is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional, written instrument.").

In this cause, wife argues that the trial court should have considered language from the original Comprehensive Agreement when interpreting the parties' intentions, as expressed in the PSA. The PSA, however, explicitly states:

> This Settlement Agreement shall *supercede and replace* the aforesaid Comprehensive Agreement *in its entirety*. Hereafter, such Comprehensive Agreement *shall be null and void* as concerns the

> parties' remaining obligations thereunder, but not as to the fully executed obligations of the parties. This Settlement Agreement shall henceforth constitute the parties' *sole and entire agreement*.

(Emphasis added). The PSA also clearly states that husband's obligation to pay spousal support "shall not be modified or terminated except in the sole event of the death of either party." Most importantly, the PSA unambiguously declares that its terms "shall constitute *the entire agreement of the parties* and that there are *no other agreements or representations*, written or oral, *made or relied upon by either party* in executing this document." (Emphasis added). We hold, therefore, that the PSA plainly declares the parties' intent that the PSA operate as their sole agreement, and parol evidence is inadmissible.

Wife argues that this cause is similar to Gayler v. Gayler, 20 Va. App. 83, 455 S.E.2d 278 (1995), where parol evidence was admitted to evince the parties' intent that spousal support would survive the wife's remarriage. The Gayler decision, however, is clearly distinguishable from this cause. In Gayler, the parties executed an original separation agreement, followed by an addendum, and both agreements were incorporated in a final decree of divorce. This Court approved the admission of parol evidence because "the addendum was executed in contemplation of the parties' forthcoming final divorce decree." Id. at 86-87, 455 S.E.2d at 280.

In this cause, however, the parties originally executed the Comprehensive Agreement that was later incorporated into a final divorce decree on August 2, 1994. The parties subsequently created a new agreement, the PSA, which was intended to replace the Comprehensive Agreement "in its entirety." The PSA was then incorporated into a final consent order. Therefore, as the trial court declared, "Unlike in Gayler, where two documents formed the contract between the parties, here only the current [PSA] does so, and only the [PSA] may be considered."

For the above reasons, we uphold the trial court's decision denying the admission of parol evidence to prove the terms of the PSA.

- 4 -

TERMINATION OF SPOUSAL SUPPORT UPON REMARRIAGE

Code § 20-109(D) plainly states, "Unless otherwise provided by stipulation or contract, spousal support and maintenance *shall terminate* upon the death of either party or remarriage of the spouse receiving support." (Emphasis added).

This Court, on several occasions, has discussed at length the function and the purpose of Code § 20-109. In Radford v. Radford, 16 Va. App. 812, 813, 433 S.E.2d 35, 36 (1993), we explained, "By resolving ambiguity, Code § 20-109 reduces litigation. To permit its mandate to be overcome by implication would introduce ambiguity, encourage litigation and, thereby, undermine the statute's purpose." Therefore, to overcome the requirements of the statute, "the agreement must contain clear and express language evincing the parties' intent that spousal support will continue after remarriage; otherwise, remarriage terminates the obligation." Miller v. Hawkins, 14 Va. App. 192, 197, 415 S.E.2d 861, 864 (1992).

We have articulated the principle of judicial precedent, stating:

> Under Virginia law, a decision of one panel "becomes a predicate for application of the doctrine of *stare decisis*" and cannot be overruled except by the Court of Appeals sitting en banc or by the Virginia Supreme Court. This principle applies not merely to the literal holding of the case, but also to its *ratio decidendi*, the essential rationale in the case that determines the judgment.

Congdon v. Congdon, 40 Va. App. 255, 265, 578 S.E.2d 833, 838 (2003) (quoting Johnson v. Commonwealth, 252 Va. 425, 430, 478 S.E.2d 539, 541 (1996)). The cause at hand, therefore, is controlled by our decisions in MacNelly v. MacNelly, 17 Va. App. 427, 437 S.E.2d 582 (1993), and Hardesty v. Hardesty, 40 Va. App. 663, 581 S.E.2d 213 (2003).

In MacNelly, the parties agreed that husband would pay spousal support for a fixed term of seven years or until the death of either party. The trial court ruled in favor of wife, because their agreement was "silent" on the issue of remarriage. 17 Va. App. at 429, 437 S.E.2d at 583. We reversed, holding that "in order to accomplish the stated objective of the statute to resolve

- 5 -

ambiguity and thereby reduce litigation, any attempt to abrogate the effect of the statute requires express language either citing the statute or expressly stating that remarriage does not terminate the obligation." Id. at 430, 437 S.E.2d at 584. Later, in Langley v. Johnson, 27 Va. App. 365, 373, 499 S.E.2d 15, 19 (1998),[1] we declared, "MacNelly could not be clearer. The absence of express language stating that remarriage will not terminate the obligation mandates the conclusion that spousal support terminates upon remarriage by operation of the statute[]."

In Hardesty, the PSA stated that spousal support "cannot terminate for any reason." 40 Va. App. at 665, 581 S.E.2d at 215. Wife argued that the agreement expressed a desire for support to survive her remarriage. We upheld the trial court's termination of spousal support, explaining, "no language in any part of the PSA explicitly evinces the parties' intent to avoid operation of the statute as to remarriage." Id. at 669, 581 S.E.2d at 216. In so holding, we specifically relied on the language in MacNelly, requiring "'express language either citing the statute or expressly stating that remarriage does not terminate the obligation.'" Id. at 667-68, 581 S.E.2d at 216 (quoting MacNelly, 17 Va. App. at 430, 437 S.E.2d at 584); see also Baldwin v. Baldwin, 44 Va. App. 93, 101, 603 S.E.2d 172, 175 (2004) ("Hardesty can best be understood as recognizing a statutory preset that can be undone only by the clearest possible expression of contractual intent.").

---

[1] As here, the wife in Langley relied on Gayler, where this Court ruled that the language of the agreement evinced the parties' intent that spousal support would survive remarriage. 27 Va. App. at 373-74, 499 S.E.2d at 19. The Langley Court, however, rejected wife's argument, focusing on a footnote in Gayler where we explained:

> "The use of the term 'only' by the parties is alone not determinative of the issue. Absent the reference to the effect of remarriage in the original agreement, the language of the addendum standing alone would not be sufficient to evince an intent of the parties to avoid the operation of [Code § 20-109(D)]."

Id. at 374, 499 S.E.2d at 19 (quoting Gayler, 20 Va. App. at 86 n.2, 455 S.E.2d at 280 n.2).

In this cause, the PSA stated that husband's spousal support obligation "shall not be modified or terminated except in the sole event of the death of either party." The PSA, therefore, was silent on the issue of remarriage. Based on our holdings in <u>MacNelly</u> and <u>Hardesty</u>, we agree with the trial court's ruling that "the [PSA] does not clearly, expressly, and unequivocally preserve [wife's] right to spousal support . . . in the event of remarriage."

For the above reasons, we uphold the decision of the trial court.

<u>Affirmed.</u>